UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MICHELLE MADONNA,

           Plaintiff,

v.                                            CAUSE NO. 2:20-CV-47 DRL

ANDREW SAUL,
Commissioner of Social Security,

           Defendant.

## OPINION AND ORDER

Michelle Madonna appeals the Social Security Administration's decision denying her application for supplemental security income under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1381-1383f. Ms. Madonna requests reversal of the administrative law judge's decision or alternatively remand for further consideration. The court affirms the administrative decision.

## BACKGROUND

Ms. Madonna received supplemental security income as a child (R. 18). After turning eighteen, her benefits ceased (R. 160). She filed an appeal, but a disability hearing officer denied it (R. 168, 190-93). Ms. Madonna received a hearing before ALJ William E. Sampson, who ruled against her (R. 142). Ms. Madonna appealed the ALJ's decision (R. 232), and the Appeals Council remanded her case back to the ALJ to further evaluate Ms. Madonna's mental health impairments and her symptoms and, if necessary, to obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from Ms. Madonna's impairments (R. 158-59).

The remand hearing occurred on January 10, 2019 before ALJ Charles J. Thorbjornsen (R. 254). He denied her request (R. 13). The Appeals Council denied review (R. 1, 282) (R. 1). Accordingly, ALJ Thorbjornsen's decision is the final decision of the agency. *See* C.F.R. § 404.981.

STANDARD

The court may review the ALJ's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is such evidence that "a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). If the ALJ relied on reasonable evidence and built an "accurate and logical bridge between the evidence and her conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISUCSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education and work experience. 20 C.F.R. § 404.1520; *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The claimant bears the burden until step five, when it shifts to the Commissioner to prove that the claimant can perform other work in the economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Step one doesn't apply here because this is an age 18 redetermination (R. 18). *See* 20 C.F.R. § 416.987(b). Ms. Madonna satisfied step two because her major depressive disorder, generalized anxiety disorder, and intellectual disability disorder with deficits in reading, written expression, and math are all severe (R. 18). At step three, the ALJ found that Ms. Madonna didn't have a conclusively disabling impairment or combination of impairments (R. 19), so he formulated an RFC (R. 22). Because Ms. Madonna has no past relevant employment, the ALJ continued past step four to step five (R. 28). Based on the vocational expert's testimony and considering Ms. Madonna's age, education, lack of work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform, including laundry laborer (DOT 361.687-018), kitchen helper (DOT 318.687-010), and bagger (DOT 920.687-018) (R. 28). Accordingly, the ALJ denied Ms. Madonna's request for benefits.

Ms. Madonna disputes the ALJ's step three findings. There, he said Ms. Madonna didn't prove that she had any impairments so severe as to be conclusively disabling, focusing on listings 12.04, 12.05, and 12.06 (R. 19). She first challenges his finding that she didn't satisfy the "paragraph B" criteria for any of these listings, each of which is identical. This criteria requires an "[e]xtreme limitation of one, or marked limitation of two," of the following mental functioning areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, App. 1 §§ 12.04(B), 12.05(B)(2), 12.06(B). The ALJ found only moderate limitations in each of the four areas, not rising to the level of extreme or marked limitations (R. 19-20).

The ALJ relied on substantial evidence and built an accurate and logical bridge from the evidence to his conclusions on each of these four mental functioning areas. *See Thomas*, 745 F.3d at 806. Regarding understanding, remembering, or applying information, the ALJ relied on the following evidence: notes from Ms. Madonna's IEP not mentioning any learning disability and indicating that

3

her reading and writing skills were better than her math skills, her class rank of 133 out of 247 with a 2.83 grade point average and notes from mental status examinations indicating that she was longitudinally alert and fully oriented with intact memory, logical thought processes, no signs of thought disorder, and average intelligence (R. 19). He cited Dr. Rabin's testimony, explaining in detail why Ms. Madonna's I.Q. score conflicted with evidence showing she had average intelligence (R. 19, 91). The ALJ relied on the state agency consultants who found that Ms. Madonna had no limitations in most areas and only moderate limitations in a handful of areas, including those relating to detailed instructions and adapting to changes in the workplace (R. 26 (citing R. 408-09, 441-42).

Regarding interacting with others, the ALJ acknowledged that Ms. Madonna had temporarily lost custody of her children and that she struggled with people that she does not "need to be by" (R. 19-20 (*see* R. 398)). *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (ALJ must confront unfavorable evidence). That said, the ALJ noted these limitations were moderate considering evidence that she could socialize with her children, fiancé, and his family (R. 19). The ALJ discussed exam findings consistently showing she was cooperative and alert and had normal speech, though he acknowledged she showed signs of irritability (R. 19). He noted that she was able to ask for help with "difficult assignments" (R. 19-20).

Regarding concentration, persistence, and pace, the ALJ acknowledged Ms. Madonna's hearing testimony about memory problems, nightmares, and anxiety (R. 20). *See Moore*, 743 F.3d at 1123. But he noted that Ms. Madonna regained custody of her children with the help of a therapist and that treatment notes and exam findings indicated she consistently presented herself as alert and fully oriented with intact memory, logical thought processes, no signs of a thought disorder, and average intelligence (R. 20, 23-25). Multiple notes said Ms. Madonna had little or no impairment in this area (R. 934, 940).

4

Regarding adapting or managing herself, the ALJ acknowledged that Ms. Madonna testified she couldn't live independently due to her traumatic childhood and upbringing (R. 20). *See Moore*, 743 F.3d at 1123. But he relied on contrary statements she made to an examiner that she could "dress, bathe and groom herself, that she is able to prepare simple meals, that she is able to do light housekeeping and simple shopping and that she is able to draw, ride her bicycle, and care for her children, which includes getting them ready for school" (R. 20 (citing R. 884)). He also gave weight to state agency consultants who opined that she had moderate limitations in her ability to respond appropriately to changes in the workplace (R. 20).

Ms. Madonna presents contrary evidence and asks the court to overturn the ALJ's decision. But the court doesn't reweigh the evidence or substitute its judgment for the ALJ's. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). The ALJ need only build an accurate and logical bridge from the evidence to his conclusion, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), which he did.

Ms. Madonna next contests the ALJ's finding that she didn't meet her burden to show that her I.Q. score was below 70 under Listing 12.05(B)(1)(a). Once again, this finding turns on conflicting evidence. Caryn Brown, Psy.D., HSPP, a licensed psychologist, opined that Ms. Madonna had a full-scale I.Q. score of 63 on the WAIS-IV test, suggesting an overall intellectual functioning that fell within the extremely low range (R. 400). Dr. Michael Rabin, a mental health expert, reviewed these findings and found them unreliable, noting that the only IEP in evidence shows she had an emotional learning impairment rather than a learning disability or low I.Q., and that Ms. Madonna's class rank of 133 out of 247 was inconsistent with an I.Q. score of 63 (R. 91). Dr. Rabin further opined that her low I.Q. was likely artificially low due to her anxiety (R. 92). Additionally, the ALJ relied on Dr. Gary Durak's opinion that Ms. Madonna had intellectual functioning in the low average range (R. 20 (citing R. 883)). The ALJ noted that mental status examinations indicated that Ms. Madonna had average

intelligence (R. 20). The ALJ credited Dr. Rabin and Dr. Durak's opinions over Dr. Brown's, providing a detailed analysis of why he did so (R. 19-22).

Ms. Madonna says the ALJ incorrectly credited Dr. Rabin's opinion over Dr. Brown's because Dr. Rabin never gave affirmative evidence disproving Dr. Brown's I.Q. estimate. This argument misses the mark. Ms. Madonna has the burden to prove she is disabled. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). The ALJ found that Ms. Madonna didn't meet her burden here, so it isn't Dr. Rabin's or the Commissioner's job to prove that she wasn't disabled. Crediting Dr. Rabin's testimony was within the ALJ's discretion, and the ALJ built an accurate and logical bridge from the evidence to his conclusion here. *Schmidt*, 395 F.3d at 744.

Ms. Madonna lastly contests the ALJ's decision because she says the Commissioner didn't prove that her medical conditions substantially improved after she turned eighteen to warrant cessation. While medical conditions are relevant when appeals arise from a continuing disability review, *see* 20 C.F.R. § 416.989, they aren't relevant here. Instead, the agency here considered whether Ms. Madonna, who received social security income under the rules applicable to children should, after turning eighteen, continue to do so under the rules applicable to new claims filed by adults. 42 U.S.C. § 1382c(a)(3)(H)(iii). Standards regarding medical improvement do not apply here. *Id.*

## CONCLUSION

The ALJ's decision was supported by substantial evidence. Accordingly, the court DENIES Ms. Madonna's appeal (ECF 1) and AFFIRMS the ALJ's decision. This order terminates the case.

SO ORDERED.

January 25, 2021              *s/ Damon R. Leichty*
                              Judge, United States District Court